Mr. Wiseman, if you'd go ahead and introduce yourself formally for the argument and let us know whether you want to reserve any time. I do. Thank you, Your Honor. And good afternoon. May it please the Court, Michael Wiseman for Aaron Tyson. I would like to reserve three minutes for rebuttal. Okay. Done. The due process clause of the 14th Amendment requires the prosecutor to approve each element of the charged offense. In this case, the trial court's accomplice instructions leave the prosecution with its burden of proving specific intent to kill, which is, of course, an essential element of first-degree murder in Pennsylvania. Notably, the prosecution proceeded against Mr. Tyson solely as an accomplice. It's well-established. We're well familiar with your briefing. Can you help us out on the question of preservation of the due process argument, independent of the ineffective assistance of counsel argument? It's true. I mean, I went back, I read, I saw the pro se. Is it enough for counsel who enters a case to come into the matter and say, yeah, and everything that my client said, that too. Is that enough to preserve it? Yes, but in this case, you also did much more than that. The various lawyers, I should say, did much more than simply say everything that my client said, as Your Honor just put it. Well, hold on, Mr. Wiseman. Can you point me to any place in the record where any of the lawyers who made an appearance made a due process argument, independent of the ineffective assistance of counsel argument? Because Mr. Tyson did do that, and I haven't seen, and I just might have missed it, where any one of the lawyers, independent of an ineffective assistance of counsel claim, made the due process argument. Well, as the court knows, a claim of ineffective assistance of counsel serves to overcome the waiver of a substantive claim. So in this case, trial counsel did not object. I understand that, but I'm trying to get you to answer my question, which is, did any lawyer make a due process claim independent of the ineffective assistance of counsel claim, other than a reference to what Mr. Tyson had said in his pro se brief? I believe the answer to that is yes. Various counsel along the way cited cases that bring to mind the due process claim that's before the court. So counsel cited the Baker case, which was Judge Brody's district court opinion, in which she granted relief on essentially the same due process claim before the court. Was that not cited in the context of an ineffective assistance of counsel claim? Well, I don't know that one can parse it in that way. You know, this all got kind of mixed up because of the misunderstanding in the initial TCRA proceedings about the trial court and the lawyers all seemed to have thought that they had to show that appellate counsel was ineffective initially. And, of course, that wasn't the rule under common law versus grant. So it all kind of got mixed up and, I don't know if it's a legal term, discombobulated at the time of the TCRA proceedings. If we take that as a given, I'm not trying to give you a hard time, Mr. Weiser. We've got to deal within the structure we're given, and the structure we're given requires us to say whether or not a claim was fairly presented to the state court. I'm sorry, go ahead. The question is, was due process standing alone, not as a part of an ineffective assistance of counsel claim, standing alone, was that fairly presented to the state court for decision? Yes. I understand your argument that the only way you get to ineffective assistance of counsel is if there was a due process argument. But we've got two claims in front of us on this COA authorized appeal. One is an independent due process claim. One is an ineffective assistance claim, which depends on the due process claim. And I'm only trying to figure out one thing. Is there any place on the record where any lawyer in the case said, hey, and we've got a due process claim? Yes, Your Honor. I think the answer to that question is that the exhaustion requirement, the preservation requirement, doesn't require chapter and verse. It requires only that the state court be put on notice of the claim. I would submit that when various PCRA counsel, there were three of them, when they cited Commonwealth v. Huffman, which expressly relies on Winship, which is, of course, the grandfather of the claim that's before the court. Winship talks about having to prove each element of the claim, and Huffman, which is essentially our situation where an accomplice instruction is not made clear that the accomplice has to have the same intent, specifically cites Winship. I understand that, Mr. Wiseman, but here's the reason I'm asking. Well, let me ask this. Is your legal position that any argument that gets made to support an ineffective assistance of counsel claim in a habeas case is by the fact that it was talked about, therefore fairly before the court, and can stand as an independent claim in a habeas proceeding? No, that's not my position. My position is that this was fairly presented through counsel's various citations to Laird v. Horn, Baker, Huffman, Backert. Those are all cases that were cited to the state courts in post-conviction and which each speak of the same due process claim that's before this court. Great. I think we might be talking past each other. This matters to me, at least, and probably to my colleagues because there's a difference. I mean, when we're looking at ineffective assistance of counsel, we necessarily have the Strickland lens in front of us. If it's an independent claim, we don't have that lens in front of us. So it really does matter whether the claim was made independently or not, doesn't it? Well, sure. Obviously, a substantive claim doesn't require the extra hurdles for a practitioner. However, as a practical matter in this case, whether this court believes that the only thing that was fairly presented was the ineffectiveness claim, there's patent ineffectiveness here when you look at this record. I mean, trial counsel, it's astounding that they failed to bring these errors to the court's attention. Mr. Wiseman, why don't you focus on the prejudice piece? Sure. Prejudice is, I think, for the same reasons, rather clear. Here we have a trial where the sole issue is intent. Did the accomplice have intent? The court's instruction, the initial instruction was flawed. The re-instruction was flawed. It repeated the initial instruction. The subsequent focus on how first degree is a better fit all show prejudice in this case. In addition, the trial court continually referred to, in instructing on the elements, continuously referred to the acts of the killer and never talked about what the accomplice's intent has to be. Finally, all of this comes home in terms of prejudice when you look at the prosecution's lengthy and completely erroneous example of essentially felony murder, which is not what this is, telling the jury that if you, you know, in for a penny, in for a pound sort of language, you know, if you're involved in the crime and a person gets killed, it doesn't matter what your intent is. That, too, was not objected to and was called to the jury. I mean, this, to me, is an incredibly strong instance where these errors really made a difference in this case. The last point I'd make... Do you have a cause of prejudice argument that will get you past the procedural default? Yes, in effect, with assistance of counsel. I have a question here that's not brief, but this is the question. Ordinarily, of course, we're dealing with habeas, and usually if a prisoner gets a habeas, usually it's on condition that within a certain amount of time the prosecution tries him again, and that's what you're seeking here, a new trial. Correct. Yes, that would be the remedy. I couldn't help but wonder. You had a jury who convicted him here on maybe a bad charge. I understand that. When I say charge, I mean charge to the jury. But is there any way that we could fashion a remedy that would not require a new trial, but, for example, might require that he be sentenced on a lesser offense? In other words, it wouldn't be dependent upon the charge to the jury looking at his culpability, that what you're saying here is that he got hit with somebody else's intent. So is there any way that we could make a remedy that would allow the state to agree to a lesser charge? I don't think so. Because I guess he got the longest sentence he could get. Yes, he got a life sentence. I think he got a life with no possibility of parole. That's correct, Your Honor. I don't think the court can do that, although it wouldn't be a bad outcome from my client's perspective. I don't think the court can do that because it is possible that if a correct charge was given, the jury may not have thought him guilty of even the third-degree murder. And so I don't think we can make that leap as much as we might like to. Can I take you back to cause and prejudice for a minute, Mr. Wiseman? Yes, of course. You mentioned the cause, which is ineffective assistance. I want to ask you about the prejudice prong of that to see if the due process claim can make it in front of us on that basis. Am I correct that the prejudice prong is assessed differently in this context than in a Strickland context, that is that it's a more stringent view of what prejudice is under Strickland? No, that's not my understanding, Judge Gordon. Prejudice is prejudice. Prejudice, you know, inures to my client both in terms of ineffectiveness as well as cause and prejudice. I believe they're co-extensive. I don't have the site in front of me. I'm not even sure they're co-extensive. Prejudice in the Strickland world is a reasonable probability of a different outcome, right? Right. That's correct. But prejudice in this context, and I could be wrong about this, but I thought in the cause and prejudice world that the prejudice had to be a demonstration of a pervasive, actual prejudice showing that the prisoner was denied fundamental fairness at trial. That is not a reasonable probability of a different outcome, but some discernible actual pervasive thing that would allow you to say, yeah, that was a completely flawed process. I believe that the prejudice standard would be akin to the Brecht standard, which is substantial and injurious. You know, effect on the petitioner, I mean, how could there be anything but a substantial and injurious? I mean, he was convicted on a bad charge when the issue with the case was what was his intent. I can't imagine a more palpable prejudice than what occurred here. Okay. So your position is, even if there's a difference in that standard, and we're looking at Albrecht, that this did infect the entire process in a way that made it constitutionally unfair, right? If there is a difference, whatever prejudice standard one wants to apply, we meet it. And I'm not just saying that rhetorically. This is outrageous what happened in this trial. It was a virtual directed verdict, a first-degree murder with all the other errors. The only other point I wanted to make before I know my time is up is that when you look at the A crime formulation as opposed to the crime, you know, that really matters in this case. I mean, you know, in COA I sought permission to appeal related to all the uncharged bad acts that came in. I mean, this trial was awash in other crime evidence. And to think that the jury wouldn't have thought, okay, well, this guy's certainly guilty of A crime. You know, he's doing drugs. He's selling drugs. He's making porno movies. He's painted very badly. And I think that really brings the prejudice problem home under whatever standard the court wants to apply. Okay. Thanks very much, Mr. Wiseman. Unless my colleagues have other questions for you, we'll have you back. I have no questions. Judge Restrepo? I'm good. I'm good. Okay. Then we'll have you back for three minutes here after we hear from the Commonwealth. Thank you. Thank you, Your Honor. May it please the Court, this is Andrew Krekel. I'm an assistant district attorney in Monroe County, Pennsylvania. I represent the Commonwealth and Superintendent SCA Housedale. Before I get into it, I would just like to correct a small error in my brief. On page 15, I cited to a Martin v. Horne case. It's actually Thomas v. Horne. Horne is Martin Horne, so I just made that little mistake, so I apologize for that. I kind of want to begin where I think this case should end, which I think is with the procedural default issue that the court raised to a sponte, which I think Your Honors are trying to get at. To answer the question you believe you're asking counsel, I don't think there's anything in the record, anywhere, that shows that these due process cause claims were raised by counsel anywhere. Well, the ineffective assistance to counsel claim was surely raised, right? Well, sure. And litigated vigorously. So take it as a given that we're looking at at least one of these things, and we're looking at it hard. And maybe the cause of prejudice is a gateway for them, so let's discuss the merits. How can it possibly be that an instruction that keeps talking about the killer, interspersed with statements about, and the killer isn't Mr. Tyson, it's that other defendant. So go ahead and keep that in mind. The instruction that keeps talking about, quote, the killer, having specific intent, is going to be okay when leaving perhaps the jury thinking that's the specific intent we've got to look at, the killer's intent. Well, I think obviously the instruction is not the most eloquent. It's not the best I've ever read. It's my understanding that Judge Bikin very commonly spoke his instructions rather than read them, as our judges do here now. I think you have to look at when the language, talking about jury instructions, you take it as a whole. Even taking it as a whole, his instruction is tethered to a crime, not to the intent to kill somebody, correct? Well, he does speak about the specific intent to kill both in the initial instruction and then when the jury came back with a question. Yeah, he spoke about it in the context of the killer. The killer, not this individual. Right. In fact, he went out of his way to say the killer is Otis Powell, it's not the person before you. I see that, yes. And the responsibility with respect to this individual was tethered to a crime. So how is that proper? I think with the entirety of it, he talks about accomplifiability. He told them that obviously this is accomplice. So I think he's talking about it generally with probably the basic instruction you would give generally. Where does the judge specifically tell the jury you have to find specific intent to kill with respect to this individual defendant? Anywhere? Directly? Yeah, directly. The way it should be charged. I don't believe so, but I do think when it's all taken together, the jury would get that idea. And I actually found a case, as I was just boning up this morning, Bronstein v. Horn. It's a Third Circuit case from 2005, 404 F3D 700, where there was actually a charge, a jury charge, that was found to be completely problematic. But the court still found it was harmless error because the trial court there read conspiracy very similar to the way accomplice was read here. With tying it to specific intent to kill. And so by the jury finding the defendant guilty in that case, the court surmised that they understood the idea that specific intent to kill must be attached to this individual. Mr. Krekel, how could we surmise that the jury understood this when the court specifically kept speaking about the killer and then saying, Mr. Typhon is not charged with being the one who did the killing? That's at page 928, lines 12 and 13 of the transcript. The repeated statement is, the killer, and that's the instruction, he's not the killer. And as Judge Restrepo points out, a statement that all you need to do is find out that the accomplice committed a crime. Those are the, you know, I understand we're supposed to look at this as a whole, but I'm trying to find some place where we can say, any place in this instruction, and I've read it pretty thoroughly, and I've read it repeatedly. And I'm, you know, candidly, I'm confused. And I think I'm, I mean, I know people, probably my colleagues on this panel that would say, well, you're easily confused. But I try to be careful about this, and I'm having a difficult time seeing what you, on behalf of the Commonwealth, can point to to say, well, it's true there was some inartful language, but look at this passage, it's very clear. Can you take us any place that I missed, maybe? Let's take a look here. I think, maybe page 689 into 90 of the transcript, it's the part that's in my brief. The judge is talking about malice, defining that. It goes into, you need malice for intent to kill, first degree. So, malice is what you need for first and third degree. And then it goes into what you need for accomplice. I'm sorry? Give us page number and line. I don't have line. It's 689 into 90 of volume 5 of the trial transcript. Okay. And then he goes into, Judge Viking went into, you may find Tyson guilty of the crime without finding he personally performed the act required for commission of that crime. He's guilty of a crime if he's an accomplice and goes into that accomplice slash conspiracy language, which the Pennsylvania general instruction mushes them together. They're very similar, which is the instruction that was in the Bronstein case. You're looking at appendix page 689? I believe it's notes of trial transcript of 689. If it's the appendix, I apologize. I believe it's the transcripts. Yeah. I'm not seeing it on page A689. I'm referring directly to the trial transcript. Yes. I apologize for that. But it goes into, as I said, the accomplice liability. And then the jury had a question about it, and the judge went back into the specific intent to kill is needed for first degree. And in this particular case, there's a charge of accomplice, almost by definition, encompasses the concept of first degree murder by its very definition. So he's gone through the first degree explanations twice at least, saying he needs specific intent to kill, and he comes to them and says, accomplice is almost by definition encompasses the concept of first degree murder by its very definition. So what he has said to them, perhaps unartfully, is that the definition of first degree murder is part of the accomplice in this particular case. And so if they have to find all of that, they have to find, obviously, specific intent to kill. Let me ask you something a little unrelated. I'm sorry? I noticed in your brief, you didn't cite to the Bennett opinion. Is there a reason for that? Do you think Bennett just doesn't apply here? I didn't find it until this morning, to be perfectly honest with you. I did find it. You did find Bennett. Okay, so distinguish Bennett from this case. In that case, it was a general conspiracy charge. There was different crimes, murder, robbery, instance of crime. Where the charge didn't include the specific intent language to kill. Right. So there was nothing in the charge where they could infer, the judges or the courts could infer, the appellate judges, could infer anything about specific intent to kill from the instruction in Bennett. And that's what led me to the Bronstein case, where the instructions taken as a whole, led the Third Circuit to find, that the jury was, could make that distinction, or not distinction, they could make that connection, based on what they ultimately found the defendant guilty of in the Bronstein case. So I was not, I was not ignoring Bennett. I just simply didn't find it until this morning. Okay. And the passage that you're relying on, is specifically on which page? I'm being specific because I want to know. I mean, I did read the brief, but the passage you just read. The specific intent part? Or the encompassing part? Yeah. Yeah, that would be, Note to Trial Transcript Volume 5, it's 713 and 14, and then it picks up again, 714 into 715. Can you give us the appendix site? It's 949 to 950. It's A950 to A951. Thank you. I apologize for that. So this statement, which is on 714, of the transcript A950 of the appendix, you're relying on the language which says, in this particular case, because there is a charge of an accomplice, almost by definition, it encompasses the concept of first degree murder by its very definition. Do you think that helps you? I believe it does. Doesn't that sound a little bit like he's saying, hey, if there's an accomplice, by definition it's first degree murder? I read that as the judge having explained what first degree murder is, what you need to find someone guilty of first degree murder, including specific intent to kill. And the judge then relating that back to accomplice liability, saying in this particular case, it's a murder one case or it's a murder case, so to find an accomplice of first degree murder, you need to find him guilty of all the same elements as if someone was the actor in a first degree. That's how I read it. That's what I would argue. Okay. This is your best shot at saying, this is what clarifies it? For me it did. Gotcha. All right. That's good enough for me. Let me ask you a question, counsel. You heard me raise the question with Mr. Weissman. Usually a habeas case where there's an error at the trial, that's the claim here, results in an order to release the defendant, the petitioner, unless within a certain time he's retried. Not always. It might not be that where there was a habeas because the evidence was insufficient. But is there any way that we could, if we reverse this and order a habeas, that we could condition it on something other than a new trial? And that was the question I asked counselor. Because your client here looks pretty guilty in general, if I can use that expression, without pinpointing it to the particular offense. But I just wondered if there was any way we could do that in this case. That's not something I had considered. I didn't research that. I honestly don't know. I know from the instruction that was read that first and third degree were considered, or were presented to the jury. But I honestly don't know. Nothing I've ever considered or thought about. I apologize. Well, he was convicted of first degree. He was. With a charge. The charge was an open count of homicide. Pardon me? It was an open count of homicide, which the prosecutor who does most of our homicide cases, he generally does an open count of homicide. And the jury is then read instructions on first degree, if it applies, third degree, and possibly voluntary manslaughter, if it applies. So he kind of gives, as his strategy, he kind of gives the jury the options. And that's what was charged here. But he was charged as an accomplice. That's specified in the criminal information. Thank you. The briefing indicates that the ineffective assistance of counsel claim fails because there was no due process violation. Does that mean that if we thought there was a due process violation, the state is conceding that there would be ineffective assistance of counsel? Because there's no argument to that effect in the brief. So I just need to know. No, I'm not conceding. I think I was, perhaps I was just, I thought I had it streamlined and I thought the procedural default issue fell one way, due process claim fell another way, or fell how I briefed it. And those being the case, I didn't think the ineffective assistance claim followed because I didn't think there was any merit to the underlying substance. But no, I certainly wouldn't concede that. All the attorneys who have been involved in this case, they still practice in Monroe County. I deal with them regularly. And I think if there was, they had seen or heard a problem with the instruction, I forget who the trial counsel was, I think it was Brian Gaglione, he would have objected. I'm sorry. It can't really be the case, Mr. Krekel, that you're arguing that this was such a good lawyer, he surely would have objected and since he didn't, there's no ineffective assistance. I mean, that's... No, I understand it. But I think something we forget, we all forget when we do the cold reading of these records years later is we weren't sitting in the courtroom listening to how it actually came out of Judge Bikin's mouth. And it may have been one of those situations where you read it cold and it doesn't sound great, or it doesn't read great, but when it was said and heard, people understood it better. And that's what I would assume happened. I think even if the instruction had been poor to Mr. Mancuso's ears, he would have spoken up and said something. Because he obviously wouldn't want a situation like this, you know, several years later, where they potentially would come back for a retrial. He wouldn't want that either. So we want good, clean instructions. I realize this one is not the best... It's not the most eloquent. I realize that. But I do think, when you take everything into consideration, the whole thing, take it as a whole, I do think it's all there. Yeah. Alright. Any other questions, Judge Restrepo? No, sir. Nothing. No, I don't have anything else. Okay. Thank you, Mr. Krekel. Mr. Weissman, your rebuttal, please. Yes, just a few points. This is not a question of eloquence. This is a question of constitutionality. Bronstein, cited by Mr. Krekel, was a harmless error outcome because the jury was given a proper conspiracy instruction that encompassed the intent to commit first-degree murder, found the defendant guilty of first-degree murder, and therefore the instruction on accomplice was deemed harmless. Of course, as I pointed out in my brief, there was no conspiracy instruction in this case, nor was there a substantive conspiracy charge. When Mr. Krekel was pointing you to what he considered to be the proper accomplice, page 926, and what I think is notable there is that all the court is saying is the question is is he an accomplice to the killing in the commission of the murder? It doesn't seek to define what an accomplice is. The accomplice definition is literally five lines on page appendix 930 where the A-crime language is used. It's specifically A930 lines 5 through 9. That's the entire instruction in this whole trial repeated in the re-instruction about accomplice, and it is clearly an incorrect instruction. The other portion that Mr. Krekel believes cured this constitutional mess is found on page 950 of the appendix and that in 951, and that is in fact the portion of the instruction where I contend not only didn't it clear it up, but I think as Judge Jordan appreciates it actually told the jury that first degree murder is the right outcome here if he's guilty of anything, or as I put it, directed a verdict. That hardly cleans up this mess. The final point I wanted to make, going back to Judge Jordan's initial questions about preservation of the due process claim, while my opponent was arguing, I went back and looked at my brief and you know, I understand that the court wants to be precise and it ought to be precise, but when you're talking about the constitutional violation through the prism of ineffectiveness, I think it's a little bit more than what the exhaustion requirement requires to say, to parse it in quite the precise way that Judge Jordan is looking for here. In the instances where counsel talked about ineffectiveness, and again there were three of them at the trial level and then on PCRA appeal, they were saying counsel was ineffective because this was a bad instruction and they then cited Huffman, they cited Baker, they cited Laird. Those are all cases that speak to the due process components of this claim. And that's all exhaustion requires. The state courts are unquestionably unnoticed from having read the briefs. Final point is that Mr. Tyson's pro se pleadings do matter in this case. There was no finding by the state court that this is hybrid representation, we're not going to consider it. They were fully considered by all the courts. And there's no question that Mr. Tyson... When you say they were fully considered by all the courts, Mr. Wiseman, what state court, independent of an ineffective assistance of counsel claim, considered the due process claim? Well, if it was presented, it doesn't matter for exhaustion purposes if they didn't speak on it. Otherwise... I'm trying to... I'm trying to address your point. You were saying, look, he clearly presented it and all the courts addressed it. And I'm just trying to say to you, they addressed it independently of ineffective assistance of counsel. Well, it's hard to say because what they say is this instruction was fine. So they don't get to parse whether it's a due process violation or it's an ineffectiveness claim or it's both or it's neither. They just say this instruction is fine. That's not Mr. Tyson's fault. He has presented the claim, he has exhausted the claim, and if the state courts don't want to address it, that's not his problem. Okay. All right. Thank you, Your Honor. I appreciate the time. Thank you very much for your time and your advice, you and Mr. Krekel. Judge Restrepo, Judge Greenberg, anything further from you, gentlemen? Nothing else. No. Okay. Well, then we thank counsel for their arguments. We've got the case under advisement. We'll invite counsel to drop off the call and we'll go ahead and call our next case.